HERBERT *v.* EAST LANSING BUILDING &
LOAN ASSOCIATION.

1. PRINCIPAL AND AGENT—MORTGAGES—AUTHORITY—PAYMENT.
   Payment to building contractor by defendant mortgagee *held,*
   to have been made before it became due and without authority
   to latter while acting as .financial agent of plaintiff mort-
   gagors in view of all the circumstances surrounding the loan.

2. SAME—AUTHORITY—MORTGAGES—BUILDING AND LOAN ASSOCIA-
   TIONS.
   Defendant building and loan association, mortgagee, may not
   question that act of its secretary and treasurer in making
   a disbursement from fund loaned to plaintiff mortgagors was
   not within the scope of the authority of such officer who
   had negotiated mortgage establishing fund from which pay-
   ment was made, where defendant relied on the mortgage as
   covering the payment made.

3. COSTS—MORTGAGES—FAILURE TO PREVAIL IN FULL.
   No costs are allowed in suit by mortgagors for accounting and
   cancellation of a mortgage, where mortgage was valid to the
   extent of fees and taxes paid by defendant mortgagee on
   behalf of plaintiff mortgagors, neither party having prevailed
   in full.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted June 5, 1951. (Docket No. 18, Calendar No.
45,040.) Decided September 5, 1951. Rehearing de-
nied December 3, 1951.

Bill by Paul A. Herbert and wife against East
Lansing Building & Loan Association of East Lan-
sing, Michigan, for an accounting, to cancel a mort-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Generally as to payment by building and loan associations, see ·
9 Am Jur, Building and Loan Associations § 62 *et seq.*

gage and for other relief. Bill dismissed. Plaintiffs appeal. Reversed.

*Thrun & Sidwell* and *Pierce, Planck & Ramsey,* for plaintiffs.

*Hammond & Schram* and *John Brattin,* for defendant.

*John Brattin* and *MacLean & Seaman,* for defendant on application for rehearing.

REID, C. J. Plaintiffs filed their bill for an accounting, for the discharge of a mortgage and for other equitable relief. From a decree dismissing the bill, plaintiffs appeal.

The decisive point in the case is whether the payment by defendant of $3,900 of plaintiffs' funds without a check or written authority, was in fact made by verbal authority of plaintiff.

Plaintiffs claim negligence and breach of duty by defendant, as financial agent for plaintiffs.

Plaintiff Paul A. Herbert handled the transactions here in question on behalf of himself and his wife, the other plaintiff, and we refer to him as plaintiff.

On April 22, 1948, plaintiff, who is a professor at Michigan State College, and his wife entered into a contract, exhibit No 3, with one Gibeau for the construction of a house (in East Lansing) to be used by plaintiffs as a residence. The contract price was $18,500, the payments to be $3,700 upon signing of the contract; $3,700 when first floor is on; $3,700 when roof is covered; $3,700 when house is plastered; $3,700 when house is completed.

After construction had been begun, plaintiffs paid Gibeau $7,200, being the first instalment in full but only $3,500 of the second instalment, and later, about July 9, 1948, plaintiff took with him the deed, ab-

stract and the Gibeau contract and specifications, to the office of defendant where he talked with Mr. Whittemore, secretary-treasurer of defendant association, and made arrangements for a loan of $12,000 secured by a $12,000 mortgage on the house and lot in question, the mortgage to be delivered on July 15, 1948, but only the amount needed to complete the construction of the house was to be advanced by defendant on the mortgage.

Plaintiff testified that he called Whittemore's attention to the 2 payments on the construction contract which then had been made of $3,700 and $3,500 and pointed out that the next payment (the payment of which by Mr. Whittemore has occasioned the dispute in this case) would necessarily be $3,900, being the $3,700 mentioned as the amount of the third instalment due plus $200 remaining unpaid of the second instalment.

Plaintiff testified he asked Mr. Whittemore whether he would make the payments as they became due for plaintiffs because it would be impossible for plaintiff to leave his summer teaching schedule (at Dunbar forest near the Soo) and come back to East Lansing at either regular or frequent intervals to make the payments, and that Mr. Whittemore stated he would make the payments as they became due.

After the meeting on July 9th, plaintiff went immediately to Texas, returned to East Lansing on July 15, 1948, and went to defendant's office where the $12,000 mortgage was executed. Plaintiff told Whittemore that Gibeau was getting along on the house and he would be wanting some money pretty soon. After executing the mortgage, plaintiff drove out to the building and there told Gibeau, the contractor, that plaintiff would be absent until the building was supposed to be finished, told Gibeau about the loan and that defendant would make the payments as due. Plaintiff then returned to his summer teaching

engagement at Dunbar forest. The next day, Gibeau went to defendant's office and received $3,900 as moneys advanced by defendant on the mortgage given by plaintiffs and applied on the contract of plaintiffs with Gibeau.

Whittemore, though in possession of the building contract and specifications, did not even ask Gibeau whether the roof was on. In fact, not only was the roof not on the garage part of the building but that part of the building was not even begun, and the completion of the fireplace chimney was still necessary before the roof at the chimney could be finished. There is no dispute that the payment of the $3,900 was not due.

Whittemore had not been instructed by plaintiff to require releases by subcontractors and did not make such requirement of Gibeau. Defendant customarily makes construction loans.

The trial court among other things in his opinion said:

"The record shows that there was very little conversation between the plaintiffs and the defendant or that any explicit instructions were given as to the payment of the $3,900. If there were any instructions they certainly were ambiguous and capable of different constructions. Mr. Whitmore [Whittemore] testified that Mr. Herbert told him on July 15th that the roof was about on the house and that Gibeau was in need of money and would be in the next day and instructed Whitmore to pay him."

If the trial court accepted as accurate and reliable, Whittemore's testimony that plaintiff told him to pay Gibeau $3,900 the next day, the court could not very well find as the quoted excerpt seems to mean, that no explicit instructions were given as to the payment of the $3,900 because the court goes on to say that Whittemore testified that plaintiff told him the roof was about on the house and Gibeau would be in the

next day and (that plaintiff) instructed Whittemore to pay him. That would be explicit enough to answer the controlling question in this case, if such testimony by Whittemore had been accepted by the court.

The court evidently rejected such testimony of Whittemore and we think properly so, because it is improbable that plaintiff told Whittemore on July 15th that the roof was about on, for the garage part was not even begun to be built, the fireplace and chimney were only about two-thirds completed, and the roof could not be finished until the chimney was completed at least through the roof. Plaintiff Herbert denies making the above-noted statement attributed to him by Whittemore (to pay Gibeau the next day).

Also, Mr. Whittemore is evidently incorrect in the following testimony:

"The figure of $3,900 was arrived at because it was a third of the loan, which was our policy."

The figure of $3,900 was not so arrived at because it clearly appears that $3,900 was "arrived at" because it was the sum of $3,700, the third instalment (to be paid when the roof was on), plus the $200 remaining unpaid on the second instalment.

To an effect inconsistent with his own testimony that plaintiff told him to pay the $3,900 the next day, Mr. Whittemore testified on recross-examination, "I think he [plaintiff Herbert] probably asked me if we would take care of the payments and make them *as they became due.*" (Italics supplied.) By that statement defendant conceded plaintiff's claim that the payment of the $3,900 was only to be made when due, which accords with plaintiff's testimony, "He [Whittemore] said he would make the payments as they became due."

It is undisputed that the $3,900 payment was made before it became due. Clearly therefore defendant

was without authority to make it. It never became due to Gibeau because Gibeau never progressed with the construction to the point where the roof was on.

On August 6th following, plaintiff at the Soo heard of Gibeau's bankruptcy. Plaintiff at once returned to East Lansing and was surprised to learn that Whittemore had paid the $3,900 before it was due.

Plaintiffs were compelled, by reason of threatened action by Whittemore, to pay interest on the mortgage, which they did for a few months. Plaintiffs had paid to Gibeau before the mortgage was given to defendant, $7,200, which with the $3,900 paid Gibeau by Whittemore would make a total of $11,100. Plaintiff estimated that Gibeau did between $4,000 and $5,000 worth of work on the building. Plaintiffs were paid nothing by the receiver for Gibeau. Plaintiffs therefore would lose the entire amount, $3,900, paid by Whittemore to Gibeau, if such amount, $3,900, were held a valid payment for plaintiffs under the mortgage.

Whittemore acting for defendant drew the papers covering the matter in question and assumed to act as the financial agent of plaintiffs. The construction contract and its terms had been fully discussed between Whittemore and plaintiffs.

Defendant East Lansing Building & Loan Association is not at liberty to question the acts of Whittemore as without the scope of the authority granted Whittemore by defendant because defendant relies on the mortgage as covering the $3,900 payment made by Whittemore.

There is no excuse for defendant paying the $3,900 before it was due when defendant well knew the arrangement authorized such payment only when due.

The mortgage to defendant is valid only to the extent of $165.66, representing payment of items mostly fees and taxes by defendant on behalf of plaintiffs. The decree appealed from is reversed.

The decree of this Court will provide that defendant may foreclose its mortgage only for $165.66. No costs, neither party having prevailed in full.

BOYLES, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred with REID, C. J. DETHMERS, J., concurred in the result. NORTH, J., did not sit.